# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Alyssa Reatha Renee Moore, | Case No. 2:20-cv-01988-BNW |
| Plaintiff, | |
| v. | **ORDER re ECF Nos. 21 and 22** |
| Kilolo Kijakazi,* | |
| Defendant. | |

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff[1] Alyssa Reatha Renee Moore's application for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively. The Court reviewed Plaintiff's motion to remand (ECF No. 21), filed June 21, 2021, and the Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF Nos. 22, 23), filed July 21, 2021. Plaintiff replied on August 10, 2021. ECF No. 24.

The parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c) on October 28, 2020. ECF No. 3. This matter was then assigned to the undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id.*

## I.    BACKGROUND

### 1.    Procedural History

On October 19, 2017 and October 20, 2017, Plaintiff applied for disability benefits and supplemental security income under Titles II and XVI of the Act, respectively, alleging an onset

---

* Kilolo Kijakazi has been substituted for her predecessor in office, Andrew Saul, pursuant to Federal Rule of Civil Procedure 25(d).

[1] The Court will use claimant and plaintiff throughout this Order. The terms are interchangeable for the purposes of this Order.

date of August 15, 2017.[2] ECF No. 19-2[3] at 2–10. Her claim was denied initially and on

reconsideration. ECF No. 19-1 at 257–60; 266–71. A hearing was held before an Administrative

Law Judge ("ALJ") on February 10, 2020. *Id*. at 130–61. On March 16, 2020, ALJ Cynthia R.

Hoover issued a decision finding that Plaintiff was not disabled. *Id*. at 84–100. The ALJ's

decision became the Commissioner's final decision when the Appeals Council denied review on

September 22, 2020. *Id*. at 8–14. Plaintiff, on October 27, 2020, timely commenced this action for

judicial review under 42 U.S.C. § 405(g). *See* IFP App. (ECF No. 1).

**II.      DISCUSSION**

      **1.      Standard of Review**

      Administrative decisions in Social Security disability benefits cases are reviewed under 42

U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g)

provides that "[a]ny individual, after any final decision of the Commissioner of Social Security

made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may

obtain a review of such decision by a civil action . . . brought in the district court of the United

States for the judicial district in which the plaintiff resides." The court may enter "upon the

pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing." 42 U.S.C. § 405(g).

      The Commissioner's findings of fact are conclusive if supported by substantial evidence.

*See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's

findings may be set aside if they are based on legal error or not supported by substantial evidence.

*See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

---

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).

[3] ECF No. 19 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 19)). All citations to the Administrative Record will use the CM/ECF page numbers.

1    278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a

2    mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

3    might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

4    Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining

5    whether the Commissioner's findings are supported by substantial evidence, the court "must

6    review the administrative record as a whole, weighing both the evidence that supports and the

7    evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

8    720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

9            Under the substantial evidence test, findings must be upheld if supported by inferences

10   reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

11   When the evidence will support more than one rational interpretation, the court must defer to the

12   Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

13   *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

14   before the court is not whether the Commissioner could reasonably have reached a different

15   conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on

16   the ALJ to make specific findings so that the court does not speculate as to the basis of the

17   findings when determining if the Commissioner's decision is supported by substantial evidence.

18   Mere cursory findings of fact without explicit statements as to what portions of the evidence were

19   accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

20   The ALJ's findings "should be as comprehensive and analytical as feasible, and where

21   appropriate, should include a statement of subordinate factual foundations on which the ultimate

22   factual conclusions are based." *Id.*

23           **2.      Disability Evaluation Process**

24           The individual seeking disability benefits has the initial burden of proving disability.

25   *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

26   demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

27   determinable physical or mental impairment which can be expected . . . to last for a continuous

28

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[4] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

---

[4] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

1     The fifth and final step requires the ALJ to determine whether the individual is able to do
2  any other work considering her RFC, age, education, and work experience. 20 C.F.R.
3  § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although
4  the individual generally continues to have the burden of proving disability at this step, a limited
5  burden of going forward with the evidence shifts to the Commissioner. The Commissioner is
6  responsible for providing evidence demonstrating that other work exists in significant numbers in
7  the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

8     Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.
9  §§ 404.1520 and 416.920. ECF No. 19-1 at 89–100.

10    At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity
11  since the alleged onset date of August 15, 2017. *Id*. at 89.

12    At step two, the ALJ found that Plaintiff had the following medically determinable
13  "severe" impairments: osteoarthrosis and allied disorders, reconstructive surgery of a weight-
14  bearing joint, and spine disorders. *Id*. at 90. She further found that Plaintiff's anxiety, depressive,
15  gastrointestinal, and thyroid disorders were non-severe. *Id*.

16    At step three, the ALJ found that Plaintiff did not have an impairment or combination of
17  impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P,
18  Appendix 1, specifically noting Listings 1.02–1.04. *Id*. at 93.

19    Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform
20  sedentary work with the following exceptions: She can lift up to 10 pounds occasionally; she can
21  lift less than 10 pounds frequently; she can stand or walk for 2 hours; she can sit for 6 hours; she
22  can never climb ladders, ropes, or scaffolds; she can never crawl; she can occasionally climb
23  ramps and stairs; she can occasionally stoop, kneel, and crouch; she can frequently balance; she
24  can occasionally reach bilaterally overhead; she should avoid concentrated exposure to extreme
25  cold and wetness, vibration, and hazards such as dangerous moving machinery and unprotected
26  heights. *Id*.

27    At step four, the ALJ found that Plaintiff can perform past relevant work as a manicurist.
28  *Id*. at 98.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that she can perform. *Id.* at 99–100. Specifically, she found that Plaintiff can work as a call-out operator, document preparer, and telephone information clerk. *Id.* The ALJ then concluded that Plaintiff was not under a disability at any time from August 15, 2017 through the date of her decision. *Id.* at 100.

**3.      Analysis**

**a.      Whether substantial evidence supports the ALJ's residual functional capacity finding**

**i.      The ALJ's decision**

The ALJ found that Plaintiff could perform sedentary work with the following limitations: She can lift up to 10 pounds occasionally; she can lift less than 10 pounds frequently; she can stand or walk for 2 hours; she can sit for 6 hours; she can never climb ladders, ropes, or scaffolds; she can never crawl; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, and crouch; she can frequently balance; she can occasionally reach bilaterally overhead; she should avoid concentrated exposure to extreme cold and wetness, vibration, and hazards such as dangerous moving machinery and unprotected heights. *Id.*

**ii.      The parties' arguments**

Plaintiff moves to remand this matter on grounds that the ALJ's RFC finding is not supported by substantial evidence because it is "belied by the record." ECF No. 21 at 5. In support of her argument, Plaintiff states, in a conclusory manner,[5] that the ALJ rejected the state agency physicians' opinions that Plaintiff could perform "light" work, the ALJ failed to mention that Plaintiff was recommended to undergo a lumbar fusion in January 2020, and the ALJ's RFC assessment "is nothing more than [the ALJ's] lay opinion." *Id.* at 5-6. She also summarizes, without development, certain medical records. *Id.* Finally, Plaintiff contends, again without

---

[5] As will be discussed further, the Court notes that Plaintiff's reasoning with respect to this argument that substantial evidence does not support the RFC lacks any development. Counsel simply quotes some case law and provides some sort of medical summary but does not explain how the law or medical records establish that Plaintiff's RFC is not supported by substantial evidence. *See* ECF No. 21 at 5–7.

1    development, that the ALJ failed to "fully and fairly develop the record" by choosing to "interpret

2    the raw medical data herself to formulate her RFC assessment" rather than, for example, calling a

3    medical expert to testify at the hearing or obtaining pre- or post-hearing consultative exams. *Id*. at

4    7.

5         The Commissioner disagrees with Plaintiff's position. She argues that substantial evidence

6    supported the RFC finding because the state agency physicians' "prior administrative medical

7    findings support the RFC, and the ALJ explained her reasons for adopting greater restrictions in

8    the RFC based on the record as a whole." ECF No. 22 at 6, 17. The Commissioner further

9    contends that "Plaintiff's challenge is nothing more than her subjective disagreement with the

10   ALJ's RFC finding[,]" noting that Plaintiff relied on much of the same evidence that the ALJ

11   cited in arguing that the ALJ's finding is not supported by substantial evidence. *Id*. at 10–11.

12   Finally, the Commissioner addresses Plaintiff's claims that the ALJ's RFC finding was simply a

13   "lay opinion" and that the ALJ failed in her duty to develop the record, explaining that both

14   arguments fail as the ALJ did not interpret raw data nor the did the ALJ have an affirmative duty

15   to seek out the opinion of either a consultative examiner or medical expert. *Id*. at 12, 15.

16            **iii.    Whether substantial evidence supports the ALJ's residual**

17   **functional capacity finding**

18        In assessing a plaintiff's RFC, an ALJ must consider the combined effect of all the

19   plaintiff's medically determinable physical and mental impairments, whether severe or non-

20   severe. 20 C.F.R. § 404.1545(a)(2). An ALJ must also consider all the relevant medical evidence

21   as well as other evidence, including subjective descriptions and observations of an individual's

22   limitations by the individual and other persons (e.g., family, friends). *Id*. § 404.1545(a)(3). To the

23   extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts

24   and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th

25   Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. *See*

26   20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)

27

28

1   (noting that "the ALJ is responsible for translating and incorporating clinical findings into a

2   succinct RFC").

3          The ALJ's findings of fact are conclusive if supported by substantial evidence. *See* 42

4   U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). But the ALJ's findings may

5   be set aside if they are not supported by substantial evidence. *See Thomas*, 278 F.3d at 954. The

6   Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a

7   preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

8   support a conclusion." *Andrews*, 53 F.3d at 1039; *see also Bayliss*, 427 F.3d at 1214 n.1. In

9   determining whether the ALJ's findings are supported by substantial evidence, the court "must

10  review the administrative record as a whole, weighing both the evidence that supports and the

11  evidence that detracts from the [ALJ's] conclusion." *Reddick*, 157 F.3d at 720; *see also Smolen*,

12  80 F.3d at 1279.

13         Under the substantial evidence test, findings must be upheld if supported by inferences

14  reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support

15  more than one rational interpretation, the court must defer to the Commissioner's interpretation.

16  *See Burch*, 400 F.3d at 679; *Flaten*, 44 F.3d at 1457. Consequently, the issue before the reviewing

17  court is not whether the Commissioner could reasonably have reached a different conclusion, but

18  whether the final decision is supported by substantial evidence.

19         Here, the issue is whether substantial evidence supports the ALJ's RFC determination.

20         The Court finds that Plaintiff has failed to develop any arguments to contest the ALJ's

21  RFC determination. While Plaintiff states that the ALJ's RFC determination is "belied by the

22  record[,]" she does not explain *how* or *why* this is so. ECF No. 21 at 5. Instead, she simply

23  summarizes some of the medical evidence in the record that—with one exception—was also cited

24  by the ALJ in the RFC determination.[6] *Id*. at 6. Notably, this summary fails to discuss or address

25  how this evidence shows that she is unable to perform sedentary work, as the ALJ found.

26  _____

27         [6] In her motion to remand, Plaintiff notes the following medical evidence: (1) Plaintiff underwent left and
    right hip replacement and cervical spine surgeries; (2) the results of Plaintiff's 2014 cervical spine MRI, 2018
    cervical spine X-ray, and 2018 cervical spine MRI; (3) an August 2017 ER note explaining that pre-left hip
28  replacement surgery, Plaintiff experienced severe left hip pain and left hip tenderness with a painful range of motion;
    (4) a December 2017 treatment note indicating that pre-right hip replacement surgery, Plaintiff experienced pain with

1          Plaintiff also briefly references that, in making her RFC determination, "the ALJ rejected

2    the opinions of state agency physicians, who all opined that [Plaintiff] could perform light work,

3    because later submitted evidence warranted additional limitations." *Id*. at 5. As the Commissioner

4    correctly acknowledges, the ALJ did not reject the state agency physicians' opinions. Rather, she

5    found their opinions persuasive but, nonetheless, concluded that Plaintiff's RFC needed to be

6    more limited. *See* ECF No. 19-1 at 97–98. Of note, the ALJ found that Plaintiff could perform

7    *sedentary* work, which is more restrictive than the *light* work designation recommended by state

8    agency physicians. Because Plaintiff failed to develop this argument, it is unclear to the Court

9    how the ALJ's analysis of the state agency physicians' opinions shows that substantial evidence

10   does not support the RFC determination.

11         Next, Plaintiff states, in conclusory fashion, that the "ALJ's RFC assessment is nothing

12   more than her lay opinion." *Id*. at 6. She then proceeds to cite district court and Ninth Circuit

13   cases outlining various legal standards as they relate to the ALJ's role in evaluating medical

14   evidence. *Id*. at 6–7. But, again, Plaintiff does not provide any analysis as to how the ALJ's RFC

15   assessment is a lay opinion, how the ALJ interpreted raw medical data, and how this supports the

16   notion that the RFC determination lacks the support of substantial evidence.

17         Finally, Plaintiff summarily notes that the ALJ "failed in her affirmative obligation to

18   fully and fairly develop the record." *Id*. at 7. She repeats that the ALJ "simply chose to interpret

19   the raw medical data herself to formulate her RFC assessment[,] which she notes is improper, and

20   that the ALJ "could" have arranged to have a medical expert testify at the hearing or required

21   Plaintiff to undergo a pre- or post-hearing consultative examination. *Id*. However, Plaintiff does

---

23   rotation in the right hip and an antalgic gait on the right side; (5) an orthopedic progress note from November 2018
     indicating that Plaintiff suffered from cervical radiculopathies and motor weakness in the upper extremities; (6) an
24   October 2019 physical examination finding restricted range of motion in the lumbar spine; and (7) a January 2020
     lumbar fusion recommendation. ECF No. 21 at 5–6. Plaintiff cites to the same medical records as the ALJ, though
25   with one exception. *Compare* ECF No. 21 at 6 (Plaintiff's summary in her motion to remand) *with* ECF No. 19-1 at
     95-96 (ALJ's discussion of Plaintiff's RFC). Plaintiff notes that, in January 2020, she was recommended to undergo a
26   lumbar fusion due to failed conservative treatment. ECF No. 21 at 6. As Plaintiff correctly points out, the ALJ does
     not mention "this recommended surgery when assessing [her] RFC." *Id*. Plaintiff, however, fails to explain why the
27   ALJ should have discussed this surgery given that "in interpreting the evidence and developing the record, the ALJ
     does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.
     2003) (citations omitted).

28

1    not explain how the ALJ interpreted raw medical data. Nor does she explain why or how the
2    ALJ's ability to arrange an examination or request a medical expert bear on the ALJ's RFC
3    determination. Finally, Plaintiff does not explain how the record is ambiguous or inadequate to
4    even trigger the ALJ's duty to develop the record. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th
5    Cir. 2011); *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

6          In short, Plaintiff did not develop her argument as to whether substantial evidence
7    supports the ALJ's RFC determination. The Court will not manufacture arguments for appellant.
8    As a result, the Court will not address the issue. *See Frost v. Berryhill*, 727 F. App'x 291, 295
9    (9th Cir. 2018) (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2) (9th Cir.
10   2008)) (finding that summarizing medical records without identifying an error was an
11   "underdeveloped argument" the court need not address); *Indep. Towers of Wash. v. Washington*,
12   350 F.3d 925, 929–30 (9th Cir. 2003) (holding that the court cannot "manufacture arguments for
13   appellant" and will review only "issues which are argued specifically and distinctly"). This is so
14   because it is not sufficient for Plaintiff to merely cite a few legal standards and summarize some
15   medical evidence without providing any explanation regarding how this legal authority or
16   medical evidence shows that substantial evidence does not support the ALJ's RFC finding. *See*
17   *Locastro v. Colvin*, No. C14-5499TSZ, 2015 WL 917616, at *2 (W.D. Wash. Mar. 3, 2015) ("The
18   Court may deem arguments that are unsupported by explanation to be waived.") (citations
19   omitted); *Demelo v. Colvin*, No. 1:13-CV-1247 BAM, 2015 WL 1320213, at *4 (E.D. Cal. Mar.
20   24, 2015) ("Given that Plaintiff has failed to properly develop the argument . . . the Court
21   considers [it] waived and will not consider this issue.") (citing *Indep. Towers of Wash.*, 350 F.3d
22   at 929).

23         **b.    Whether the ALJ provided specific, clear, and convincing reasons for**
24   **discounting Plaintiff's pain and symptom testimony**

25               **i.    The ALJ's decision**

26         The ALJ found that Plaintiff's "medically determinable impairments could reasonably be
27   expected to cause the alleged symptoms[,]" but her "statements concerning the intensity,
28   persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision." ECF No. 19-1 at 94. The ALJ reasoned that the objective medical evidence is "somewhat" inconsistent with her pain and symptom testimony. *Id*. at 96. She also noted that Plaintiff's ability to drive "is somewhat inconsistent with significant lower extremity neurological abnormalities." *Id*. at 97. Finally, the ALJ argued that "post-surgical treatment notes . . . indicate general recovery from the right and left hip replacement and the cervical spine surgeries." *Id*.

### ii.    The parties' arguments

Plaintiff moves to remand this matter because she argues that "the ALJ's assertion that [Plaintiff's] complaints were inconsistent with the record as whole is not a specific, clear and convincing reason." ECF No. 21 at 9. She also notes that because this is the "*sole*" reason that the ALJ gives in discounting Plaintiff's pain and symptom testimony, it "is not a legally sufficient reason for discounting [Plaintiff's] complaints." *Id*.

The Commissioner's summary of the ALJ's reasons for discounting Plaintiff's pain and symptom testimony differs from Plaintiff's summary. While Plaintiff's position is that the ALJ provided only *one* reason (i.e., that Plaintiff's pain and symptom testimony is inconsistent with the objective medical evidence), the Commissioner argues that the ALJ provided *three* reasons to discount this testimony: (1) Plaintiff's testimony was inconsistent with the objective evidence found in the record, (2) Plaintiff's testimony was inconsistent with her activities of daily living, and (3) Plaintiff's testimony was inconsistent with the medical improvement she experienced. *Compare* ECF No. 21 at 9 *with* ECF No. 22 at 19.

In her reply, Plaintiff asserts that the "ALJ's statements about [Plaintiff's] ability to drive and medical improvement are all couched as a discrepancy between the objective findings and her statements." ECF No. 24 at 5. But the Commissioner argues that Plaintiff waived her ability to challenge the latter two reasons given the lack of analysis in the opening brief. ECF No. 22 at 19. Finally, she asserts that the Commissioner did not err, as each of the three reasons were supported by the record. *Id*. at 21–22.

//

//

1

                **iii.**     **Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's pain and symptom testimony**

2

        An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony

3

regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there

4

is objective medical evidence of an underlying impairment which could reasonably be expected to

5

produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.

6

2012) (internal quotation marks omitted). "The claimant is not required to show that her

7

impairment 'could reasonably be expected to cause the severity of the symptom she has alleged;

8

she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*

9

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted).

10

        Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the

11

ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ]

12

gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

13

1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are

14

insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

15

undermines the [plaintiff's] complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

16

1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with

17

findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

18

discredit [the plaintiff's] testimony.")).

19

        The Ninth Circuit has recognized the clear and convincing evidence standard to be "the

20

most demanding required in Social Security cases" and "not an easy requirement to meet."

21

*Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec.*

22

*Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir.

23

2017). An ALJ's failure to provide "specific, clear, and convincing reasons" for rejecting a

24

plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it

25

precludes the court from conducting a meaningful review of the ALJ's reasoning and ensuring

26

that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487,

27

489 (9th Cir. 2015).

28

1    In making an adverse credibility determination, the ALJ may consider, among other

2    factors, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's

3    testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4)

4    the claimant's work record; and (5) testimony from physicians or third parties concerning the

5    nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958–59.

6    Here, because there is no dispute that Plaintiff's impairments, as of the alleged onset date,

7    could have caused the symptoms about which she testified at the ALJ hearing, the ALJ had to

8    make a credibility determination as to Plaintiff's testimony. *Molina*, 674 F.3d at 1112. And

9    because the ALJ did not find that Plaintiff was a malingerer, the ALJ had to provide specific,

10   clear, and convincing reasons, supported by substantial evidence, to discount Plaintiff's

11   subjective symptom testimony. *Ghanim*, 763 F.3d at 1163.

12   The ALJ provided three reasons for discounting Plaintiff's pain and symptom testimony.

13   She considered the objective medical evidence, one of Plaintiff's activities of daily living, and the

14   effectiveness of treatment to conclude that Plaintiff's testimony was not credible. The Court will

15   discuss each cited reason in turn. And, as discussed below, the Court finds that two of the ALJ's

16   reasons were specific, clear, and convincing reasons, supported by substantial evidence, and,

17   therefore, holds that the ALJ did commit harmful error with respect to discounting Plaintiff's

18   testimony.

19   **a.   Objective medical evidence**

20   An ALJ "may not discredit the claimant's subjective complaints solely because the

21   objective evidence fails to fully corroborate the degree of pain alleged." *Coleman v. Saul*, 979

22   F.3d 751, 756 (9th Cir. 2020) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

23   But an ALJ may discredit a plaintiff's testimony when it contradicts evidence in the medical

24   record. *See Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995).

25   While Plaintiff argues that the ALJ simply summarized the medical evidence and opinions

26   "without providing a nexus as to how that information casts doubt on" Plaintiff's pain and

27   symptom testimony, the ALJ did identify testimony that conflicted with the objective medical

28   evidence. ECF No. 21 at 8. For example, the ALJ explained that Plaintiff's physical examinations

conducted after her cervical spine surgery conflicted with "her allegations of chronic and debilitating pain and mobility hindrance[.]" ECF No. 19-1 at 96. As did other findings, including, for example, a normal EMG study and "repeatedly exibit[ing] normal strength and muscle mass in her upper and lower extremities without objective signs of abnormal neurological functioning in the extremities . . . ." *Id.* Because these findings conflict with Plaintiff's pain and symptom testimony, the ALJ's finding that her testimony was not credible because it was inconsistent with the objective medical evidence is a specific, clear, and convincing reason for an adverse credibility determination.

Additionally, Plaintiff argues that the ALJ erred by only providing this *one* reason (i.e., the objective medical evidence was inconsistent with her testimony) in discounting Plaintiff's pain and symptom testimony. ECF No. 21 at 9. However, the ALJ provided two other reasons for not finding Plaintiff's statements credible, and one of these other reasons, as discussed below, was specific, clear, and convincing.

**b.  Plaintiff's activities of daily living**

The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112–13.

Here, the ALJ noted that Plaintiff's ability to drive "is somewhat inconsistent with significant lower extremity neurological abnormalities." ECF No. 19-1 at 97. However, this reason is not a specific, clear, and convincing reason. This is so because the ALJ failed to explain *how* Plaintiff's ability to drive is inconsistent with her lower extremity neurological abnormalities or to specify *which* lower extremity neurological abnormalities are inconsistent with her ability to

1   drive. The ALJ further failed to acknowledge that, although Plaintiff testified that she

2   "sometimes" drives, she also testified that she has difficulties driving, noting that she experiences

3   problems with "neck motions, turning, [and] looking . . . [b]oth left and right." ECF No. 19-1 at

4   135, 145. Moreover, the ALJ did not address the Adult Function Report completed by Plaintiff's

5   daughter where Plaintiff's daughter explained that her mother does drive but has not "since her

6   surgery[.]" ECF No. 19-2 at 55. In an Adult Function Report completed by Plaintiff, Plaintiff also

7   explained that she had not driven since October 9, 2017. *Id*. at 63. Finally, the ALJ failed to

8   explain how Plaintiff's ability to sometimes drive (with difficulties) is transferable to a work

9   setting.

10        Although the Court finds that the ALJ erred with respect to this reason, it finds the error

11   harmless.[7] The Court does not need to uphold all of an ALJ's reasons for discounting a plaintiff's

12   testimony to affirm the ALJ's decision, so long as the ALJ provided other reasons that were

13   specific, clear, and convincing. *See Batson*, 359 F.3d at 1197 (holding that where one of an ALJ's

14   several reasons supporting an adverse credibility finding is held invalid, the error is harmless if it

15   "does not negate the validity of the ALJ's ultimate conclusion that [the claimant's testimony] was

16   not credible"); *Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the

17   ALJ provided four reasons to discredit the claimant, two of which were invalid). As discussed in

18   this section, the Court finds that the ALJ's other two reasons for discounting Plaintiff's pain and

19   symptom testimony are specific, clear, and convincing reasons supported by substantial evidence

20   in the record.

21          **c.  Plaintiff's treatment**

22        The effectiveness of treatment is a relevant factor in determining the severity of a

23   claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of*

24   *Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively

25   controlled with medication are not disabling for purposes of determining eligibility for

26   benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable

27

28         [7] The Court also recognizes that Plaintiff did not address this issue in her motion to remand, though she did address it in her reply. *See* ECF No. 24 at 5–6.

1    response to treatment can undermine a claimant's complaints of debilitating pain or other severe
2    limitations).
3           Here, the ALJ acknowledged that Plaintiff experienced a "significantly diminished
4    residual functional capacity during the adjudicatory period." ECF No. 19-1 at 97. However, the
5    ALJ also found that Plaintiff recovered from her hip and cervical spine surgeries. *Id.* (finding that
6    "post-surgical treatment notes . . . indicate general recovery from the right and left hip
7    replacement and the cervical spine surgeries"). For example, following Plaintiff's cervical spine
8    surgery in January 2019, "cervical spine imaging showed good hardware placement without signs
9    of significant abnormalities[,]" "the physical examination was unremarkable[,]" Plaintiff
10   "exhibited intact sensation globally[,] full motor strength in the upper and lower extremities[,
11   and] normal coordination[,]" and Plaintiff's "nerve conduction study was 'entirely within normal
12   limits[.]'" *Id.* at 96. In short, the ALJ found that Plaintiff's improvement demonstrated in the
13   "longitudinal medical record is somewhat inconsistent with [her] core allegation that physical
14   impairments rende[r] her disabled and unable to perform any work activity." *Id.*
15          Accordingly, because the record contains ample evidence that Plaintiff's pain and
16   symptoms have improved with treatment (*see, e.g.,* ECF No. 19-1 at 43; ECF No. 19-2 at 326,
17   329; ECF No. 19-3 at 17), the Court finds that this ALJ finding is a specific, clear, and
18   convincing reason to discredit Plaintiff's testimony regarding her limitations.
19   //
20   //
21   //
22   //
23   //
24   //
25   //
26   //
27   //
28   //

III.     **CONCLUSION AND ORDER**

      Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand (ECF No. 21) is DENIED.

      **IT IS FURTHER ORDERED** that the Commissioner's cross-motion to affirm and respond to Plaintiff's motion to remand (ECF Nos. 22, 23) is GRANTED.

      **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to close this case.

      DATED: March 10, 2022.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE